# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

FREDRICK O. BLACK,                    )
                                      )
    Petitioner,                       )
                                      )
v.                                    )   Nos.:  3:12-CV-288-TAV
                                      )         3:07-CR-61-TAV-HBG
UNITED STATES OF AMERICA,             )
                                      )
    Respondent.                       )

## MEMORANDUM OPINION

Before the Court now is Petitioner's pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [Doc. 72]. The government filed its response [Doc. 85], and Petitioner filed a reply [Doc. 103]. Petitioner has thirteen additional motions pending including: a motion for initial consideration [Doc. 75], motion for leave to appeal *in forma pauperis* [Doc. 77], motion for an evidentiary hearing [Doc. 78], renewed motion for an evidentiary hearing [Doc. 87], motion for an extension of time to reply to the response brief of the United States [Doc. 88], motion for transcripts [Doc. 89], motion to waive transcript and document fees [Doc. 92], notice of intent to reply [Doc. 94], motion for leave to amend original § 2255 motion [Doc. 97], motion for appointment of counsel and leave to conduct court ordered discovery [Doc. 105], motion for summary judgment [Doc. 110], motion for status update [Doc. 113], and motion to expedite pursuant to 28 U.S.C. § 1657 [Doc. 117]. For the reasons stated below, Petitioner's § 2255 motion [Doc. 72, 84] will be **DENIED** and motions for evidentiary

hearings [Docs. 78, 87], to amend [Doc. 97], and for summary judgment [Doc. 110] will be **DENIED**. The remainder of Petitioner's motions [Docs. 75, 77, 88, 89, 92, 94, 105, 113, 117] will be **DENIED as moot**, and this action will be **DISMISSED**.

## I.    BACKGROUND

On May 18, 2007, a deputy sheriff in Anderson County, Tennessee, conducted a traffic stop of a vehicle driven by Petitioner and attempted to arrest Petitioner after discovering he did not have a valid driver's license [Presentencing Report ("PSR") ¶ 13]. After briefly struggling with the deputy, Petitioner fled on foot and threw something behind a dumpster [*Id.*]. Petitioner was eventually apprehended and the discarded items, one baggie containing crack cocaine and one baggie containing cocaine hydrochloride, were retrieved [Doc. 45 ¶ 4].

A federal grand jury charged Petitioner with possession with intent to distribute at least five grams of cocaine base ("crack"), in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) (Count One), and possession with intent to distribute cocaine hydrochloride, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) (Count Two) [Doc. 1]. Pursuant to 21 U.S.C. § 851, the United States filed timely notice of its intent to enhance Petitioner's sentence based on his prior federal conviction for distributing cocaine base [Doc. 8].

On November 18, 2008, Petitioner pleaded guilty pursuant to a plea agreement with the United States [Doc. 45, 64], as to the offenses in the instant case and to violation of his supervised release in Case No. 3:94-cr-117 [Doc. 45 ¶ 1(a)–(c); Doc. 64 p. 6]. In his plea agreement, Petitioner acknowledged he had "read the indictment, discussed the

charges and possible defenses with . . . counsel, and understood[] the crime(s) charged" [Doc. 45 ¶ 3]. In addition to stating he was pleading guilty because he was "in fact guilty" [*Id.*], Petitioner admitted the substances contained in the baggie discarded while fleeing arrest were "tested at a Drug Enforcement Administration [(DEA)] laboratory" and "determined to be 12.0 grams of cocaine base and 61.6 grams of cocaine hydrochloride, respectively" [*Id.* ¶ 4].[1] Finally, Petitioner admitted he was previously convicted of distributing cocaine base in the Eastern District of Tennessee on August 25, 1995, in case number 3:94-CR-117 and was serving a term of supervised release relative to that conviction at the time of his arrest [*Id.*].

In exchange for the forgoing plea, the United States agreed not to oppose a two-level reduction in Petitioner's base offense level for acceptance of responsibility under section 3E1.1(a) of the Sentencing Guidelines [*Id.* ¶ 6]. The United States also agreed to recommend any sentence received relative to revocation of Petitioner's supervised release run concurrently with any sentence imposed in Case No. 3:07-cr-00061-TAV-HBG [*Id.* ¶ 8]. Petitioner acknowledged "no promises had been made by any representative of the United States . . . as to what the sentence [would] be [in his case]" and that "any estimates or predictions made . . . defense counsel or any other person regarding the potential sentence . . . [were] not binding on the Court" [*Id.*].

---

[1] This weight differed from an earlier determination made by the arresting deputy, who recorded the weight as 13.2 grams of cocaine base and 63.2 grams of cocaine hydrochloride [Doc. 110 p. 4]. The United States acknowledged during a pre-trial proceeding the discrepancy gave rise to a genuine forensic issue as to the actual weight of the drugs [Doc. 72 p. 15].

3

Petitioner agreed "not to file a direct appeal of [his] conviction(s) or sentence except . . . [in the case of] a sentence imposed above the sentencing guidelines range as determined by the district court" [*Id.* ¶ 10]. Petitioner also "voluntarily waive[d] [his] right to file any motions or pleadings pursuant to 28 U.S.C. § 2255 or to collaterally attach [his] conviction(s) and/or resulting sentence" except in cases "of ineffective assistance of counsel or prosecutorial misconduct not known to [Petitioner] by the time of the entry of judgment" [*Id.* ¶ 11].

During his Rule 11 colloquy, Petitioner informed the Court he had earned his GED and taken several college preparatory courses, had no difficulty reading or writing English, and was not then under the influence of any drugs, alcohol, or prescription medication [Doc. 64 p. 6–8]. Petitioner also confirmed he had received "ample opportunity" to discuss the case with counsel, was satisfied with counsel's representation, and understood the legal rights he was giving up by pleading guilty [*Id.* at 8–11]. When provided the opportunity, Petitioner specifically affirmed his knowledge of the plea terms [*Id.* at 12–13] and waiver of rights to appeal and collateral review [*Id.*]. Petitioner stipulated to the recitation by the United States of the elements of the offenses, factual basis for the plea, and statutorily-authorized range of punishment [*Id.* at 13–18] and stated he understood that dissatisfaction with his sentence would not justify withdrawal of his guilty plea [*Id.* at 21–23]. Based upon the forgoing, the Court concluded Petitioner's plea was both knowing and voluntary [*Id.* at 23–24].

4

Shortly after entry of his guilty plea, Petitioner filed a pro se motion to withdraw his plea based on allegations it was hastily entered and the product of counsel's misadvice [Doc. 48; Doc. 73 ¶ 27; Doc. 84 p. 3]. The Court denied the motion based on Local Rule 83.4(c), which prohibits defendants from acting on their own behalf while represented by counsel [Doc. 50].[2]

Based on the stipulations of fact in his plea agreement, probation deemed Petitioner responsible for possession of 12.0 grams of cocaine base and 61.6 grams of cocaine hydrochloride, resulting in a total base offense level of 22 and criminal history category of IV [PSR ¶¶ 14, 28, 44]. Despite an initial Guidelines range of 63 to 78 months' imprisonment [Id. ¶ 86], Petitioner's prior felony conviction for drug trafficking, triggered a ten-year mandatory minimum sentence for Court One under 21 U.S.C. § 841(b)(1)(B) [Id. ¶84–86].[3] Despite acknowledging he was subject to this statutory mandatory minimum, Petitioner maintained imposition of such sentence would be "inappropriate," excessive, and unfair [Doc. 65 p. 3, 13–15, 16–39]. On April 1, 2009, the Court sentenced Petitioner to 120 months' imprisonment to run concurrent for Count One, Count Two, and violation of his supervised release in Case No. 3:94-cr-117 [Doc. 59; Doc. 65 at 8–9, 51; Doc. 42].

---

[2] That very same day, Petitioner filed a motion to withdraw his earlier pro se motion describing the event as an attempt to renegotiate certain terms of the plea [Doc. 51 ¶ 6]. Petitioner explained that, after consulting with counsel, he had changed his mind and "wishe[d] to honor and maintain" the existing agreement [Id.]. Because the Court had already denied Petitioner's pro se motion based on violation of local court rules, the Court denied Petitioner's subsequent motion to withdraw the earlier filing as moot [Doc. 52].

[3] The United States provided Petitioner with timely notice of such enhancement in compliance with 21 U.S.C. § 851 [Doc. 8].

Petitioner directly appealed the propriety of his statutory-mandated sentence on three grounds: (1) the statutory ten-year mandatory minimum sentence was superseded by the factors set forth in 18 U.S.C. § 3553 so that the mandatory sentence was now advisory; (2) the district Court's imposition of the ten-year sentence violated Petitioner's due process and equal protection rights; and (3) the ten-year sentence violated his right to be free of cruel and unusual punishment under the Eighth Amendment [Doc. 67; Doc. 72 p. 2]. The Sixth Circuit dismissed the appeal on September 3, 2010, finding Petitioner had knowingly and voluntarily waived the right to appeal his sentence based on anything other than imposition of a sentence above the Guidelines range as determined by the Court [Doc. 67 p. 2]. On February 17, 2011, the Sixth Circuit denied Petitioner's pro se request for rehearing *en banc* [Docket Sheet for Appeal No. 09-5565].

On February 15, 2012, Petitioner filed a timely motion pursuant to 28 U.S.C. § 2255 [Doc. 72]. Over the course of the next several years, Petitioner filed a litany of additional motions [Docs. 72, 75, 77, 78, 81, 87, 88, 89, 92, 94, 97, 104, 105, 110, 113, 116, 117], the most relevant of which include two motions for evidentiary hearing [Docs. 78, 87], two motions for leave to amend [Docs. 81, 97], and a motion for summary judgment [Doc. 110].

## II.  RESOLUTION OF PETITIONER'S NON-DISPOSITIVE MOTIONS

### A.  Timeliness of Petitioner's Motions to Amend

Petitioner has filed two requests for leave to amend his original § 2255 motion, the first on July 12, 2012 [Doc. 81] and second on May 24, 2013 [Doc. 97].  The Court granted the first motion on August 13, 2012 [Doc. 83], but has yet to address the second.

Amended claims and defenses are subject to the same limitations period as the original § 2255 motion.  *Cameron v. United States*, No. 1:05-CV-264, 2012 U.S. Dist. LEXIS 48381, at *3–6 (E.D. Tenn. April 5, 2012) (citing *Olsen v. United States*, 27 F. App'x 566 (6th Cir. Dec. 14, 2001)).  As a result, the Court's first task is to determine whether the amended claims filed pursuant to Petitioner's first motion for leave to amend [Docs. 81, 84] or amendments proposed in Petitioner's pending second motion [Doc. 97] are timely.

Motions for collateral relief from conviction pursuant to § 2255 are subject to a one-year statute of limitations running from the date on which the judgment of conviction becomes final, 28 U.S.C. § 2255(f), and in the case of a direct appeal, a petitioner's conviction becomes final upon either denial of certiorari or expiration of the ninety-day period in which to seek such review.  *Clay v. United States*, 537 U.S. 522, 525, 532 (2003).  Thus, Petitioner's conviction became final for purposes of the statute of limitations on May 18, 2012, one-year and ninety days after the Sixth Circuit denied his petition for rehearing *en banc* on February 17, 2011.  *See* Supreme Court Rule 13.3 (noting if petition for rehearing is timely filed in the Court of Appeals, the time to file a

7

petition for a writ of certiorari runs from the date of the denial of rehearing). Because Petitioner's one year statutory period concluded on May 18, 2012, neither the amended claims filed pursuant to his first motion to amend nor proposed additional claims appended to his pending motion are timely under 28 U.S.C. § 2255(f).

When an amendment is untimely, the Court looks to Rule 15(c) of the Federal Rules of Civil Procedure to determine whether the new or proposed claims "relate back" to the petitioner's timely, original pleading and, as a result, are saved from being time barred by expiration of the statute of limitations. *Mayle v. Felix*, 545 U.S. 644, 656–57 (2005), *overruled on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562–63 (2007). An amended claim relates back if it "ar[i]se[s] out of the [same] conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. P. 15(c)(2). The Supreme Court has rejected a broad reading of "conduct, transaction, or occurrence" in the context of post-conviction relief and explained an amended petition will not relate back "when it asserts a new ground for relief supported by facts that differ in both time and type from those [set forth in] the original pleading." *Felix*, 545 U.S. at 650. In other words, "relation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims." *Id.* at 658 (citations omitted).

### 1. Amendments Pursuant to Petitioner's July 12, 2012 Motion

While it is true the Court granted Petitioner's July 12, 2012 motion for leave to amend [Doc. 81] on August 13, 2012, nothing in that order addressed whether the

amendments contained therein [Doc. 81-2, 84] would ultimately relate back to Petitioner's original February 21, 2012 pleading [Doc. 83].[4] The amendment contains three new grounds of collateral attack. First, Petitioner argues any waiver of appeal was invalid because the plea agreement containing such waiver was involuntary and unknowing entered [Doc. 81-2 p. 1–4]. Second, Petitioner argues the Court violated the Sixth Amendment when it denied his presentencing request for appointment of new counsel [*Id.* at 4–5]. Third, Petitioner argues enforcement of the plea agreement would violate his due process and equal protection rights because the terms of the agreement are unconscionable [*Id.* at 5–6].

The first amended claim appears to be an almost verbatim recitation of the third ground for collateral relief set forth in Petitioner's original § 2255 motion [Docs. 72, 81, 84] and as a result, relates back to the date of the original pleading and is saved from the expired statute of limitations. *See Batts v. United States*, No. 1:10-CV-243, 2013 U.S. Dist. LEXIS 128839, at *8–9 (E.D. Tenn. Sept. 10, 2013) (explaining an amendment will only relate back where it amplifies or adds facts in support of existing claim or where it adds a new claim, resolution of which hinges on same core facts or conduct as a pre-existing timely claim). In contrast, Petitioner's second and third amended claims present entirely new legal theories, resolution of which hinges on occurrences wholly unrelated

---

[4] While Rule 15(a) of the Federal Rules of Civil Procedure indicates motions for leave to amend should be "freely [granted] when justice so requires," Fed. R. Civ. P. 15(a), whether ensuing untimely amendments relate back to a petitioner's original pleading depends on an entirely different standard set forth in Rule 15(c). *See* Fed. R. Civ. P. 15(c) (explaining untimely amendments only relate back when the claims or defenses arise out of the same conduct, transaction, or occurrence set out in the original pleading).

to any claim contained in his timely pleading. As a result, neither relates back to the original § 2255 motion and both are barred by the statute of limitations.

### 2. Pending May 24, 2012 Motion for Leave to Amend

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend should "be freely given when justice so requires." Fed. R. Civ. P. 15(a). Relevant factors include "undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Anderson v. Young Touchstone Co.*, 735 F. Supp. 2d 831, 833 (W.D. Tenn. 2010) (quoting *Forman v. Davis*, 371 U.S. 178, 182 (1965)). Because futility of amendment is a permissible basis on which to deny a motion for leave to amend under Rule 15(a), *see Forman*, 371 U.S. at 182 (noting grant or denial of a motion to amend is within the discretion of the district court), resolution of Petitioner's May 24, 2012 motion depends on whether the claims therein are barred by 28 U.S.C. § 2255(f)'s statute of limitations.

A contemporaneously filed memorandum outlines Petitioner's four new proposed grounds for collateral relief [Doc. 98]. Petitioner's first two claims assert counsel provided constitutionally deficient assistance of counsel when he failed to object to use of the DEA's quantification of cocaine base and cocaine hydrochloride in his presentencing report [*Id.* at 2–3] or the Court's reliance on such quantification to enhance his sentence [*Id.* at 3–4]. Next, Petitioner argues the Court violated his Fifth Amendment rights and Rule 11(b)(3) of the Federal Rules of Criminal Procedure when it accepted, and entered

judgment based upon, a guilty plea made without sufficient factual support [*Id.* at 4–5]. Finally, Petitioner claims imposition of 21 U.S.C. 841(b)(1)(B)'s ten-year mandatory minimum sentence violated his right to equal protection under the law [*Id.* at 5–6].

Because none of the forgoing proposed amended claims share a common "core of operative fact" with any claims contained in Petitioner's original § 2255 motion, none relate back to a timely pleading and all are barred by the one-year statute of limitations. While Petitioner raises several ineffective assistance of counsel claims in his original motion [Doc. 72 p. 14–19, 23–25], none hinge on the propriety of basing Petitioner's sentence on the DEA's quantification of illegal substances.[5] Similarly, Petitioner's third and fourth claims appear to apply novel legal theories to conduct "that differ[s] in both time and type from [the conduct at issue in Petitioner's timely pleading]." *Felix*, 454 U.S. at 650; *see also Miller*, 231 F.3d at 249 (noting "a court will [only] permit a party to add . . . a new legal theory in an amended pleading [where] . . . it arises out of the same transaction or occurrence").

Based on the forgoing, Petitioner's pending May 24, 2012 motion for leave to amend [Docs. 97] will be **DENIED** based on futility of the proposed amendments therein.

---

[5] Although one of Petitioner's timely ineffective assistance of counsel claims hinges on the assertion counsel deviated from professional norms when he failed to obtain independent testing, analysis, or weighing of the controlled substances [Doc. 72 p. 14–16], the core operative conduct underlying that claim, i.e. counsel's conduct during the pre-trial investigatory process, differs significantly from the conduct underlying ineffective assistance at the sentencing stage.

**B.     Motions for an Evidentiary Hearing and Summary Judgment**

Under Rule 8 of the rules governing § 2255 proceedings in United States District Courts (the "§ 2255 Rules"), the Court must determine, based on a review of the answer and the record, whether an evidentiary hearing is required.  *Pola v. United States*, 778 F.3d 525, 532 (6th Cir. 2015) (quoting *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013)).  While the burden to show an entitlement to an evidentiary hearing is relatively light, a petitioner must offer more than mere assertions of innocence. *Valentine v. United States*, 488 F.3d 325, 334 (6th Cir. 2007) (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)).  For example, a petitioner is entitled to an evidentiary hearing where he presents "a factual narrative of the events that is neither contradicted by the record nor inherently incredible and the government offers nothing more than contrary representations to contradict it." *Huff*, 734 F.3d at 707 (internal quotation marks omitted) (quoting *Valentine*, 488 F.3d at 334); *see also Pola*, 778 F.3d at 534 (noting an evidentiary hearing would be required where a petitioner's and counsel's affidavits directly contradicted each other regarding whether petitioner had requested counsel to file a notice of appeal). In contrast, an evidentiary hearing is not required where the record conclusively shows that the petitioner is entitled to no relief, such as where "allegations . . . [constitute] conclusions rather than statements of facts." *Huff*, 734 F.3d at 607 (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)).

Petitioner has not identified any material factual dispute requiring resolution by way of an evidentiary hearing. Further, for reasons discussed in subsequent sections, the

Court finds the undisputed record conclusively precludes collateral relief and that Petitioner is not entitled to judgment as a matter of law. Petitioner's motions for evidentiary hearing [Doc. 78, 89] and motion for summary judgment [Doc. 110] will be **DENIED** accordingly.

## III.    STANDARD OF REVIEW AND RESOLUTION OF TIMELY CLAIMS

To obtain relief under 28 U.S.C. § 2255, a petitioner must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). He "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

While Petitioner articulates seven grounds of collateral challenge [Doc. 72], the motion is more accurately condensed into five claims.[6] The five claims include: (1) constitutionally deficient assistance of counsel during both the plea and direct appeal

---

[6] Petitioner categorizes his claims as follows: (1) the government failed to comply with discovery pursuant to Federal Rule of Criminal Procedure 16 and, as a result, rendered Petitioner's guilty plea unknowing, unintelligent, and involuntary (Ground One); (2) Petitioner was denied effective assistance of counsel during the plea process (Ground Two); (3) the government breached the plea agreement (Ground Three); (4) the Court erred with it denied Petitioner's motion to withdraw his guilty plea (Ground Four); (5) Petitioner did not knowingly, intelligently, or voluntarily waive his right to appeal his sentence (Ground Five); (6) Petitioner's guilty plea was entered unknowingly, unintelligently, and involuntarily (Ground Six); and (7) Petitioner was denied effective assistance of counsel on direct appeal (Ground Seven) [Doc. 72]. Because Grounds One and Five and Grounds Two and Seven are better categorized as separate theories of a common ground, the Court will condense Petitioner's claims into five claims.

13

process [*Id.* at 14–19, 23–25]; (2) improper entry of an involuntary and unknowing plea [*Id.* at 21–23]; (3) involuntary waiver of the right to appeal his conviction and sentence [*Id.* at 20–21]; (4) breach the plea agreement by the United States [*Id.* at 19]; and (5) improper denial of Petitioner's pro se motion to withdraw his guilty plea [*Id.* at 19–20].[7] For the reasons explained below, none warrant relief.

As a threshold matter, Petitioner procedurally defaulted all of his claims except for ineffective assistance by failing to raise them on direct appeal. *Compare United States v. Walden*, 625 F.3d 961, 967 (6th Cir. 2010) (explaining ineffective assistance of counsel claims are properly raised for the first time by way of collateral proceeding), *with Shropshire v. United States*, No. 1:08-CV-261, 2011 U.S. Dist. LEXIS 103765, at *37 (E.D. Tenn. Sept. 13, 2011) (explaining that a § 2255 motion is not a substitute for properly raising issues on direct appeal). "In the case where the [Petitioner] has failed to assert his claims on direct appeal and thus has procedurally defaulted, in order to raise them in a § 2255 motion he also must show either that (1) he had good cause for his failure to raise such arguments and he would suffer prejudice if unable to proceed, or (2) he is actually innocent." *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003); *accord United States v. Frady*, 456 U.S. 152, 167–68 (1982). The "hurdle" to excuse procedural default is "intentionally high[,] . . . for respect for the finality of judgments

---

[7] The sole claim that relates back from Petitioner's untimely motions to amend is the almost verbatim recitation of Petitioner's argument waiver of the right to appeal his sentence was involuntary and unknowing [Docs. 72, 81, 84].

demands that collateral attacks generally not be allowed to do service for an appeal."
*Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000).

Petitioner does not allege actual innocence, but instead attempts to rely on the alleged ineffectiveness of counsel on appeal to establish good cause for his failure to raise the defaulted claims. While it is true that ineffective assistance of counsel during the appeal process can serve as a basis for excusing procedural default, *Sullivan v. United States*, 587 F. App'x 935, 942–45 (6th Cir. 2014), a petitioner attempting to rely on defective assistance to establish good cause bears the burden of demonstrating constitutionally deficient performance. *Id.* For the reasons discussed below, the Court finds Petitioner did not receive ineffective assistance of appellate counsel and as a result, has failed to establish good cause for procedural default. *See Acevedo v. United States*, No. 1:10-CV-46, 2012 U.S. Dist. LEXIS 9817, at *19–20 (E.D. Tenn. Jan. 27, 2012) (finding Petitioner failed to establish cause for procedural default where he was unable to establish constitutionally ineffective assistance of counsel on appeal). Even if he were able to establish good cause, Petitioner cannot show that an inability to raise his claims now would result in prejudice because all such claims lack merit. *See United States v. Novene*, No. 1:97-CV-249, 2000 U.S. Dist. LEXIS 23287, at *12–13 (E.D. Tenn. June 22, 2000) (noting excusal of procedural default requires "errors [be] . . . to the [Petitioner's] actual and substantial disadvantage").

## A.    Claim One: Ineffective Assistance of Counsel

A petitioner alleging ineffective assistance of counsel must satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1987).  First, the petitioner must establish, by identifying specific acts or omissions, that counsel's performance was deficient and that counsel did not provide "reasonably effective assistance," *id.*, as measured by "prevailing professional norms," *Rompilla v. Beard*, 545 U.S. 374, 380 (2005).  Counsel is presumed to have provided effective assistance, and the petitioner bears the burden of showing otherwise.  *Mason v. Mitchell*, 320 F.3d 604, 616–17 (6th Cir. 2003); *see also Strickland*, 466 U.S. at 689 (a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action might be considered sound . . . strategy" (internal citation omitted)).

Second, the petitioner must demonstrate "a reasonable probability that, but for [counsel's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694.  "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691; *see also Smith v. Robbins*, 528 U.S. 259, 285–86 (2000).  If a petitioner fails to prove that he sustained prejudice, the Court need not decide whether counsel's performance was deficient.  *See United States v. Hynes*, 467 F.3d 951, 970 (6th Cir. 2006) (holding that alleged "flaws" in trial counsel's

16

representation did not warrant a new trial where the claims, even if true, did not demonstrate that the jury would have reached a different conclusion).

### 1. Insufficient Factual Investigation

Petitioner's first theory alleges his attorney deviated from professional norms when he failed to (1) investigate a potential defense witness identified by defendant or (2) have the controlled substance recovered at the time of Petitioner's arrest independently tested [Doc. 72 p. 14–17]. He goes on to argue that the absence of such investigation rendered counsel ill-prepared for trial, which in turn caused Petitioner to plead guilty [*Id.* at 17]. Petitioner asserts, despite being informed about a potential defense witness who observed Petitioner's initial encounter with the Anderson County Sheriff's Department, counsel failed to make any attempt to interview the individual for exculpatory information or examine the scene of Petitioner's arrest [*Id.* at 15–16].[8] Petitioner also argues counsel deviated from professional norms when he failed to independently test the drugs found in Petitioner's possession despite acknowledgment by the United States that discrepancies between the arresting deputy and DEA weight determinations created a "genuine forensic issue as to the actual weight of the drugs [for which Petitioner was being charged]" [*Id.* at 15]. The Court need not determine whether counsel deviated from professional norms because both allegations fail for lack of prejudice.

---

[8] Petitioner appears to suggest the witness observed the initial events leading up to his arrest and could testify that the deputy sheriff's stated reasons for pulling him over, speeding and a broken brake light, were false [Doc. 72 p. 16].

A defendant who enters a guilty plea simultaneously waives several constitutional rights, including his privilege against compulsory self-incrimination, right to trial by jury, right to confront his accusers, and right to be proven guilty beyond a reasonable doubt. *McCarthy v. United States*, 394 U.S. 459, 466 (1969), *abrogated on other grounds by* Fed. R. Crim. P. 11(h). Petitioner acknowledged such waiver in both his plea agreement [Doc. 45 ¶ 5] and subsequent Rule 11 plea colloquy [Doc. 64 p. 10–11]. Further, Petitioner stipulated on both occasions to possession of 12.0 grams of cocaine base in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) [Docs. 45 ¶ 4, 64 p. 20] and 61.6 grams of cocaine hydrochloride in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) [*Id.*]. Because Petitioner stipulated to possession of cocaine base and cocaine hydrochloride at the weights determined by the DEA, he cannot demonstrate any prejudice arose from counsel's failure to obtain independent testing or alleged failure to investigate the scene of his arrest. *Cf. Sims v. Livesay*, 970 F.2d 1575, 1580 (6th Cir. 1992) (finding failure to investigate only prejudiced defendant where the potentially discoverable information spoke to a critical issue of fact in dispute). The facts stipulated by Petitioner in his plea agreement and colloquy adequately satisfy the legal elements for his convictions.

## 2. Erroneous Sentencing Advice

Petitioner's second theory of ineffective assistance claims counsel deviated from professional norms by mistakenly advising Petitioner a recent change in the law made him eligible for the 500 hour drug program and completion of such program would result

in a one-year reduction to his sentence [Doc. 72 p. 17–18]. The Court finds this claim too fails as a matter of law.

Petitioner was correctly advised of his sentencing exposure during the plea colloquy [Doc. 64 p. 14–15, 18], and in his written plea agreement [Doc. 45 ¶ 1(a)–(c)]. Further, Petitioner answered "no" when asked whether "any person . . . promised or suggested [he would] receive a lighter sentence or other form of lenience" [Doc. 64 p. 11–12]. Finally, Petitioner received ample warning that any sentence predictions made by counsel were estimates and would not support a subsequent effort to withdraw of his plea [Doc. 45 ¶ 8; Doc. 64 p. 21–22].

While "no procedural device for the taking of guilty pleas is so perfect in design and exercise as to warrant a *per se* rule rendering it 'uniformly invulnerable to subsequent challenge,'" *Blackledge v. Allison*, 431 U.S. 63, 73 (1977) (quoting *Fontaine v. United States*, 411 U.S. 213, 215 (1973)), "representations of the [petitioner], his lawyer, and the prosecutor at [the original plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceeding," *id.* at 74. Based on the forgoing, it is said that "[s]olemn declarations in open court carry a strong presumption of verity," *id.*, and justify summary dismissal of any collateral challenge based on conclusory assertions or contentions incredible on the face of the record, *id.*

Petitioner has failed to submit evidence sufficient to overcome the presumed veracity of his solemn statements during the Rule 11 colloquy. *Compare Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) (finding the defendant was bound by statements he made in response to the court's plea colloquy), *and Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999) (finding the petitioner bound to plea colloquy responses despite some evidence that contradicted statements made therein), *with Blackledge*, 431 U.S. at 74 (finding summary dismissal inappropriate where the petitioner provided specific detailed terms of the alleged broken promise; when, where, and by whom such promise was made; and the identity witness to conversation). Because he cannot demonstrate the alleged misadvice of counsel caused him to plead guilty, Petitioner cannot establish he incurred prejudice as a result of the alleged deficient assistance.

### 3. Failure to Obtain Debriefing or Cooperation Plea

Petitioner suggests counsel deviated from the professional standard of care when he (1) failed to provide the United States with a list of "individuals involved in the [Oak Ridge] drug trade" [Doc. 72 p. 16], (2) seek out a cooperation plea agreement [*Id.* at 18–19], or (3) coordinate a debriefing session with the United States [*Id.* at 19]. Petitioner appears to believe that any of the forgoing actions would have resulted in either a more favorable plea or reduced sentence by way of motion for downward departure.

Petitioner's first and second allegations contradict the record. Petitioner requested new counsel during a motion hearing on April 9, 2009 citing, among other reasons, counsel's failure to give the United States a list of names Petitioner had prepared,

20

ostensibly "representing [his] desire to cooperate" [Doc. 57 p. 1]. Counsel explained he had not given the names to the United States because the government was not interested in receiving the information [*Id.* at 1–2]. The United States confirmed it had refused to allow Petitioner to plead guilty pursuant to a "cooperation [plea] agreement" and informed Petitioner of that fact before he pleaded guilty [*Id.* at 2]. While the Assistant United States Attorney indicated he would be "willing to pass a list of names around" to see whether anyone would be interested in such information, he made clear that he would do that for "any defendant" [*Id.*].

Because counsel appears to have done exactly what Petitioner now claims he should have done, i.e., approach the United States with the list of names and attempt to arrange a cooperation plea agreement, Petitioner cannot show counsel deviated from professional norms or afforded ineffective assistance of counsel on that basis.

While it is true a defendant has "the right to rely on counsel as a 'medium' between him and the [government]," *Maine v. Moulton*, 474 U.S. 159, 176 (1985), and exploring the possibility of a plea agreement is an important part of providing adequate representation, *Holloway v. Arkansas*, 435 U.S. 475, 490 (1978), the decision whether to file a motion for downward departure based upon substantial assistance rests solely in the discretion of the United States, *see e.g.*, *Wade v. United States*, 504 U.S. 181, 185 (1992) ("The government [has] a power, [but] not a duty, to file a [downward departure] motion when a defendant has substantially assisted.").

21

Nothing in the record suggests Petitioner possessed the ability to provide "substantial assistance" to the United States.[9]   In fact, the Court finds Petitioner's claim "the government want[ed] to have [him] work as an informant" [Doc. 72 p. 5] incredible in light of the fact that the United States previously declined to negotiate a cooperation plea agreement [Doc. 57 p. 2].  *See McCleese v. United States*, 75 F.3d 1174, 1179 (7th Cir. 1996) (noting a § 2255 motion requires "objective evidence" and finding self-serving testimony inadequate to show prejudice under Strickland).

### 4.     Failure to Provide Adequate Representation on Appeal

Finally, Petitioner claims counsel provided ineffective assistance by failing to communicate with him adequately during the appeal process [Doc. 72 p. 23] and filing a "frivolous" appellate brief instead of (a) litigating the issues Petitioner wanted to raise or (b) filing an *Anders* brief, if counsel believe that no meritorious issues existed, so that Petitioner could have filed a pro se supplemental brief [*Id.* at 24].   On the issue of adequate communication, Petitioner claims counsel failed to respond to multiple requests for information during the pendency of his direct appeal, provide Petitioner with copies of the brief's filed, or file timely appearance and transcript order forms [*Id.*].   On the

---

[9] Petitioner's claim rests on several assumptions including: (1) the United States would have met with Petitioner upon request; (2) Petitioner would have provided useful information to the United States; (3) the United States would have deemed Petitioner's assistance substantial; (4) the United States would have filed a motion for downward departure despite the absence of any obligation or promise to do so in Petitioner's plea agreement.

appeal issue, Petitioner relies on counsel's response to a Tennessee Board of Professional Responsibility complaint as proof counsel viewed the appeal as "hopeless."[10]

First, even assuming counsel's failure to communicate with Petitioner during the appeal process amounted to a violation of his ethical obligations and a deviation for professional norms, Petitioner has not shown he sustained any prejudice as a result.

The Sixth Circuit has repeatedly made clear that a Petitioner's waiver of the right to appeal his conviction or sentence will be upheld so long as the waiver is knowing, intelligent, and voluntary. *See e.g.*, *United States v. McGlivery*, 403 F.3d 361, 363 (6th Cir. 2005); *Davila v. United States*, 258 F.3d 448, 451 (6th Cir. 2001); *Watson v. United States*, 165 F.3d 486, 489 (6th Cir. 1999). Petitioner expressly waived the right to direct appeal in his plea agreement except for a sentence imposed above the Guidelines as determined by the district court [Doc. 45 ¶ 10] and testified under oath before the Court that had "ample opportunity to go over [the terms of that] agreement. . . with [counsel]" [Doc. 64 p. 12]. For reasons explained in subsequent sections, the Court finds Petitioner's waiver was both knowing and voluntary. *See United States v. Wilson*, 438 F.3d 672, 673 (6th Cir. 2006) (noting defendant may surrender any right in a plea agreement provided that the waiver is made knowingly and voluntarily). Because none of Petitioner's alternative claims challenge his sentence as one imposed above the Guidelines, all are

---

[10] After several failed attempts to contact counsel, Petitioner filed a complaint with the Tennessee Board of Professional Responsibility [Doc. 72 p. 23]. In his reply to that complaint, counsel explained that he felt the appeal was hopeless but filed it anyway because Petitioner wanted him to do so [*Id.*].

likely barred by the waiver of appeal and Petitioner cannot demonstrate he was prejudiced by the alleged breakdown in communication.

Second, Petitioner cannot establish the decision to pursue Petitioner's direct appeal instead of filing an *Anders* brief amounted to a deviation from professional norms. While defendants are constitutionally entitled to effective assistance of counsel during appeals of right, *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008), the *Strickland* performance standard does not require the attorney raise every non-frivolous issue. *Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003). Indeed, the process of "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail . . . is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)). As a result, it is difficult to prove that an appellate attorney violated the performance prong by presenting one argument on appeal rather than another, *Smith v. Robbins*, 528 U.S. 259, 289 (2002), and any petitioner attempting to do so "must demonstrate that the issue not presented 'was clearly stronger than issues that counsel did present.'" *Carver*, 349 F.3d at 348 (quoting Robbins, 538 U.S. at 289). Petitioner has not satisfied this high burden.

While the decision of whether to appeal rests solely with a criminal defendant, subsequent decisions about which issues to raise on appeal rest with counsel, who is better suited to estimate the probability of success on any given argument. *Barnes*, 463 U.S. at 751. Counsel identified the issues he believed represented Petitioner's best chance to avoid dismissible based on the waiver and succeed on the merits. Petitioner has

24

not identified any "clearly stronger" claim and counsel's professional judgment is not rendered constitutional deficient simply because Petitioner would prefer some other issue have been raised.[11]  *See Coleman v. Mitchell*, 268 F.2d 417, 430–31 (6th Cir. 2001) (declining to find counsel ineffective for refusing to appeal every conceivable issue).

### B. Claim Two: Involuntary and Unknowing Guilty Plea

Petitioner's second claim argues the Court should set aside his guilty plea because it was unknowingly and involuntarily entered [Doc. 72 p. 21–23].  As support, Petitioner cites: (1) the failure of the United States to disclose the "underlying tests" upon which DEA chemists based their qualification and categorization of the controlled substances recovered at the time of his arrest [*Id.* at 14, 21], (2) Petitioner's belief the plea agreement guaranteed him a formal opportunity to cooperate with the United States by way of debriefing session [*Id.* at 19, 21–23], and (3) counsel's alleged misrepresentation about the potential to reduce Petitioner's sentence [*Id.* at 21–23].

Arguments about the validity of Petitioner's plea could have been raised on direct appeal, but were not, and are thus procedurally defaulted.  *See Bousley v. United States*, 523 U.S. 614, 621 (1998) (explaining even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first raised on direct appeal).  As

---

[11] Petitioner appears to argue prejudice should be presumed based on counsel's failure to file an *Anders* brief [Doc. 110 at 14].  It is well established, however, that failure to file an *Anders* brief gives rise to a presumption of prejudice only where counsel simultaneously fails to pursue the defendant's direct appeal, resulting in total deprivation of counsel.  *See Allen v. United States*, 938 F.2d 664, 666 (6th Cir. 1991) (explaining prejudice is presumed only where appellate counsel fails to either (1) prosecute the appeal or (2) file *Anders* brief); *Freels v. Hills*, 843 F.2d 958, 962 (6th Cir. 1988) (same).  Because counsel did in fact pursue Petitioner's direct appeal, the claim fails for lack of actual prejudice as well.

25

discussed above, Petitioner has failed to establish the good cause necessary to obtain review of the defaulted claim. However, even assuming he could excuse his procedural default, Petitioner's claim fails on the merits.

During his Rule 11 colloquy, Petitioner stated under oath that he understood the elements of the offense with which he was charged [Doc. 64 p. 10, 18–19] and rights he was giving up by pleading guilty [*Id.* at 10–11]. After hearing the charges against him, Petitioner admitted to the acts alleged [*Id.* at 19], acknowledged the applicable statutorily-authorized penalties [*Id.* at 19–20], and confirmed he had received "ample opportunity" to discuss the case with counsel [*Id.* at 8, 12]. Finally, Petitioner stated under oath that he was pleading guilty because he "was in fact guilty" [*Id.* at 20].

"Representations of the [petitioner], his lawyer, and the prosecutor at [the original plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceeding." *Blackledge*, 431 U.S. at 74 (quoting *Fontaine*, 411 U.S. at 215). Where, as here, the court has scrupulously followed the required Rule 11 procedure, "the defendant is bound by his statements." *Baker v.*, 781 F.2d at 90. None of Petitioner's alleged deficiencies overcome the presumed veracity of his solemn statements in open court.

Even if the Court accepts Petitioner's argument that the United States violated discovery rules by failing to identify the "underlying tests" through which DEA forensic chemists derived their opinion that the substances recovered at the time of Petitioner's arrest were cocaine base and cocaine hydrochloride [Doc. 72 p. 21–23], Petitioner

26

stipulated to the nature and quantity of the drugs [Doc. 45 ¶ 4; Doc. 64 p. 16–19] and waived his right to be proven guilty beyond a reasonable doubt [Doc. 45 ¶ 5; Doc. 64 p. 12]. *See United States v. Martin*, 536 F.3d 926, 932 (6th Cir. 2008) (reiterating that a guilty plea waives any challenge to the sufficiency of the evidence); *United States v. Turner*, 272 F.3d at 389–90 (same). Petitioner went on to affirm the voluntary nature of both statements [Doc. 65 p. 11–12, 20]. The presumptive sincerity of the forgoing stipulation and waiver are not overcome by alleged deficiencies in the pre-trial discovery process. *See United States v. Dossie*, 188 F. App'x 339, 344–45 (6th Cir. 2006) (explaining that, absent an express reservation as part of a conditional plea agreement, the act of pleading guilty waives the ability to raise non-jurisdictional objections like purported pre-plea discovery violations).

Similarly, Petitioner's second and third contentions, i.e., the United States promised him a formal opportunity to cooperate and counsel promised Petitioner he would only serve seven-and-one-half years, fail to overcome the presumed veracity of his sworn statements to the contrary.[12] Nothing in Petitioner's written agreement conditions his plea on the availability of a debriefing session or opportunity to cooperate [Doc. 45]. Further, Petitioner testified no "person, including an officer or agent of the government, promised or suggested [he would] receive a lighter sentence or other form of leniency" [Doc. 64 p. 12] and he had not been pressured, threatened, forced, or otherwise induced

---

[12] It is also worth noting Petitioner's assertions contradict the record. The rejection by the United States of Petitioner's attempt to provide information about other members of the Oak Ridge drug community and request for a cooperation plea suggest no reasonable expectation of cooperation existed [Doc. 57].

27

to plead guilty [*Id.* at 11–12]. Moreover, Petitioner was correctly advised of his sentencing exposure, including the ten-year statutory mandatory minimum, in both his written plea agreement and during the Rule 11 colloquy [Doc. 45 ¶¶ 1–2, 8; Doc. 64 p. 11–12, 14–15, 17–23]. The "integration clause" contained in Petitioner's plea agreement [Doc. 45 ¶ 14] defeats any suggestion Petitioner relied on oral promises outside the written agreement. *See United States v. Quesada*, 607 F.3d 1128, 1132 (6th Cir. 2010) (quoting *United States v. Hunt*, 205 F.3d 931, 935 (6th Cir. 2000)).

## C. Claim Three: Involuntary Waiver of the Right to Appeal

In an apparent attempt to avoid the consequences of waiving the right to appeal his conviction or sentence, Petitioner asks the Court to invalidate paragraph ten of his plea agreement [Doc. 72 p. 7–8]. Specifically, Petitioner argues the provision is unenforceable because it was entered without sufficient knowledge; a fact Petitioner argues is evidenced by his pro se motion to withdraw the plea, objection to the Court's sentencing determination in an effort to preserve issues for appeal, and fact that counsel actually filed an appeal on his behalf [*Id.* at 7–8, 20–21; Doc. 73 ¶ 27].

Petitioner unambiguously acknowledged during the plea colloquy he was giving up his right to file a direct appeal except a sentence imposed above the Guidelines range determined by the Court [Doc. 45 ¶ 10; Doc. 64 p. 12–13] and had reviewed the entire agreement with his counsel [Doc. 64 p. 9, 12–13]. Petitioner has not pointed to any violation of Rule 11(b)(1)(N) of the Federal Rules of Criminal Procedure, *see United States v. Broom*, 207 F. App'x 565, 569 (6th Cir. 2006) (explaining courts are not

28

required to "specifically ask [a petitioner] whether he . . . understands the terms of the appellate waiver provision"), and conclusory assertions of confusion cannot overcome the presumed veracity of his sworn statements to the contrary. Thus, Petitioner's attempt to invalidate paragraph ten of his plea agreement fails as a matter of law. *See Ramos*, 170 F.3d at 566 (holding that defendant was bond by sworn statements during the plea colloquy, even if some evidence exists to contradict those admissions).[13]

### D.   Claim Four: Breach of Plea Agreement by United States

Petitioner claims the United States breached the plea agreement by not granting him a debriefing session in which he could "help himself" and thereby obtain a lower sentence [Doc. 72 p. 19]. Yet, Petitioner's plea agreement contains an integration clause explaining that written agreement represents "the full and complete agreement and understanding between the parties concerning [Petitioner's] guilty plea . . . and . . . no other agreements, promises, undertakings, or understandings [exist] between the [Petitioner] and the United States" [Doc. 45 ¶ 12]. Because nothing in the written agreement guarantees Petitioner an opportunity to debrief or cooperate [Doc. 45], the failure of the United States to provide such cannot constitute breach.

---

[13] To the extent Petitioner attempts to rely on the Court's comment at the close of sentencing that Petitioner "may have the right to appeal the sentence imposed" [Doc. 65 p. 53], the Sixth Circuit has made clear any confusion created by the recitation of nonexistent appeal rights during sentencing does not impugn the validity of a plea agreement entered prior to such statements being made. *See United States v. McIntyre*, 445 F. App'x 830, 832–33 (6th Cir. 2011) (dismissing appeal based on an appeal-waiver provision and rejecting suggestion guilty plea was rendered involuntary when, at sentencing, the district court misspoke about the availability of a right to appeal); *United States v. Fleming*, 239 F.3d 761, 764–765 (6th Cir. 2001) (holding post-sentencing formulaic recitation of the parties' right to appeal the sentence cannot reinstate a right to appeal that the defendant previously waive in his plea agreement).

29

### E.     Claim Five: Denial of Petitioner's Pro Se Motion to Withdraw Plea

Petitioner's final claim attack asserts the Court erred when it denied Petitioner's pro se motion to withdraw his guilty plea based on Local Rule 83.4(c) [Doc. 72 p. 19–20]. Petitioner's claim appears to rest on the fact the Court denied the motion without conducting an evidentiary hearing [*Id.* at 20].

First, Petitioner's written plea agreement "knowingly and voluntarily waives the right to file any motions or pleadings pursuant to 28 U.S.C. § 2255 or to collaterally attack [his] conviction(s) and/or resulting sentence" except for "ineffective assistance of counsel or prosecutorial misconduct not know to [him] by the time of the entry of judgment" [Doc. 45 ¶ 11]. Because  challenge of the Court's decision to deny his pro se motion is neither a claim for ineffective assistance nor prosecutorial misconduct, the Court finds the waiver provision of his plea agreement bars Petitioner's claim.[14]

Second, the decision whether to grant a hearing regarding a motion to withdraw a guilty plea, like the decision whether to grant the motion itself, rests within a district court's discretion. *United States v. Matthews*, 477 F. App'x 371, 373 (6th Cir. 2012). A court does "not abuse its discretion [by] following its own local rules." *Stilley v. Bell*, 155 F. App'x 217, 222 (6th Cir. 2005). Thus, the Court's decision to dismiss Petitioner's pro se motion based on Local Rule 83.4(c)'s prohibition on hybrid representation does not amount to an abuse of discretion and Petitioner's claim fails on the merits. *See United States v. Cromer*, 389 F.3d 662, 681 n.12 (6th Cir. 2004) (noting defendant has no

---

[14] Petitioner's claim is alternatively barred by procedural default in absence of good cause and prejudice.

right to combine self-representation with representation by counsel); *see also United States v. Washington*, 434 F.3d 7, 16 (1st. Cir. 2006) (holding courts may "deny hybrid representation outright" because the right to counsel and right of self-representation are mutually exclusive); *United States v. Chavin*, 316 F.3d 666, 671–72 (7th Cir. 2002) (collecting cases for the proposition that hybrid representation is not constitutionally or statutorily required).

## IV. REMAINDER OF PETITIONER'S PENDING MOTIONS

In light of the Court's resolution of the forgoing motions [Docs. 72, 78, 87, 97, 110], Petitioner's remaining motions for initial consideration [Doc. 75], for leave to proceed in forma pauperis [Doc. 77], for extensions of time [Docs. 88, 94], addressing transcripts or document [Doc. 89, 92], for appointment of counsel [Doc. 105], for a status update [Doc. 113], and to expedite [Doc. 117], all of which hinge on existence of a valid underlying claim for collateral relief, will be **DENIED as moot**.

## V. CONCLUSION

Because a hearing is unnecessary and further amendment would be futile, Petitioner's motions for an evidentiary hearing [Docs. 78, 87] and leave to amend [Doc. 97] will be **DENIED**. Petitioner's motion for summary judgment [Doc. 110] will also be **DENIED**. Because the claims presented in his underlying motion for collateral relief [Doc. 72, 84] are either time barred or lack merit, the Court finds Petitioner is not entitled to relief pursuant to 28 U.S.C. § 2255. Accordingly, a judgment will enter **DENYING**

31

the motion [Doc. 72, 84] and the action will be **DISMISSED**. Petitioner's remaining motions [Docs. 75, 77, 88, 89, 92, 94, 105, 113, 117] will be **DENIED as moot**.

The Court will **CERTIFY** any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this Court will **DENY** Petitioner leave to proceed *in forma pauperis* on appeal. *See* Rule 24 of the Federal Rules of Appellate Procedure. Petitioner having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253; Rule 22(b) of the Federal Rules of Appellate Procedure.

**ORDER ACCORDINGLY.**


s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE